UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-40012

|  |  |
|---|---|
| JAMES W. TRAGAKIS & SUSAN M. O'HARA,<br>    **Plaintiffs**<br><br>v.<br><br>ROBERT F. ANGILLY, JR., P.E. d/b/a CRITERIUM-ANGILLY ENGINEERS; CRITERIUM ENGINEERS, INC.; NRT NEW ENGLAND INCORPORATED d/b/a COLDWELL BANKER RESIDENTIAL BROKERAGE; PAULETTE E. DAVIS; CENDANT MOBILITY FINANCIAL CORPORATION; and UNITED STATES AUTOMOBILE ASSOCIATION,<br>    **Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION TO AMEND COMPLAINT

Now come the Plaintiffs, James W. Tragakis and Susan M. O'Hara, and move that they be allowed to amend the Complaint in this action for the following reason:

1. In drafting the Complaint counsel for the Plaintiffs inadvertently misnamed the Defendant "United States Automobile Association" when the correct name of the Defendant is "United Services Automobile Association".

2. Since none of the Defendants in this case have yet been served with the original Complaint, no party will be prejudiced by the allowance of this motion.

3. The Amended Complaint is attached to this motion as Exhibit "A".

1

WHEREFORE, the Plaintiffs, James W. Tragakis and Susan M. O"Hara, move that this Motion to Amend the Complaint be allowed.

**James W. Tragakis**
**Susan M. O'Hara**
By their Attorney,

John S. Davagian, II
BBO # 114740
Davagian & Associates
365 Boston Post Road, Ste. 200
Sudbury, MA 01776-3023
978-443-3443

2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.  05-CV-40012

)
**JAMES W. TRAGAKIS & SUSAN M. O'HARA,**) 
   **Plaintiffs**              )
                          )
**v.**                       )        **AMENDED COMPLAINT**
                          )
**ROBERT F. ANGILLY, JR., P.E. d/b/a**  )
**CRITERIUM-ANGILLY ENGINEERS;**   )
**CRITERIUM ENGINEERS, INC.; NRT NEW** )
**ENGLAND INCORPORATED d/b/a**    )
**COLDWELL BANKER RESIDENTIAL**   )
**BROKERAGE; PAULETTE E. DAVIS;**   )
**CENDANT MOBILITY FINANCIAL**     )
**CORPORATION; and UNITED SERVICES** )
**AUTOMOBILE ASSOCIATION,**      )
   **Defendants**              )
)

## PARTIES AND JURISDICTIONAL STATEMENT

1.  The Plaintiffs, James W. Tragakis and Susan M. O'Hara ("Tragakis/O'Hara"), are husband
    and wife with a principal residence in Westborough, Worcester County, Massachusettts.

2.  The Defendant, Robert F. Angilly, Jr., P.E. is an individual doing business as Criterium-
    Angilly Engineers ("Angilly") with a principal place of business in East Greenwich, Rhode
    Island.

3.  The Defendant, Criterium Engineers, Inc. ("Criterium") is a de facto Massachusetts
    corporation with a usual place of business in Portland, Maine.

4.  The Defendant, Cendant Mobility Financial Corporation, ("Cendant") is a corporation
    organized and existing under the laws of the state of Delaware, having its principal place of
    business in New York, New York.

5. NRT New England Incorporated d/b/a Coldwell Banker Residential Brokerage ("Coldwell Banker") is a corporation organized and existing under the laws of the state of Delaware having a usual place of business in Waltham, Middlesex County, Massachusetts.

6. Paulette E. Davis ("Davis") is an individual and a real estate broker licensed in Massachusetts who resides in Westborough, Worcester County, Massachusetts.

7. United Services Automobile Association ("USAA") is an insurance company licensed to do business in Massachusetts and having its principal place of business in San Antonio, Texas.

8. This matter arises out of the negligence of Angilly and Criterium in the inspection of and the misrepresentations of and by Davis, Coldwell Banker and Cendant in the sale of a certain parcel of real property with a structure thereon located at 5 Olde Coach Road in Westborough, Worcester County, Massachusetts (the "Premises") to Tragakis/O'Hara. Further, USAA having provided a homeowners policy to Tragakis/O'Hara has wrongfully denied coverage for settlement to the referenced structure.

9. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332. This Court has original jurisdiction over the above-captioned action because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00.

10. Pursuant to 28 U.S.C. § 1391(a), venue is appropriate in the Commonwealth of Massachusetts because it is the locus of real property which is the subject matter of this action and the residence of one of the Defendants.

## COUNT I

11. Tragakis/O'Hara re-allege paragraphs one through ten above as if fully restated herein.

12. In early January of 2002, Tragakis/O'Hara were shown the Premises by Michael Mathieu of ReMax First Choice of 155 Otis Street, Northborough, Massachusetts.

2

13. Davis, working from the office of Coldwell Banker located at 95A Turnpike Road in Westborough, Massachusetts, was the listing broker.

14. Davis met with Tragakis/O'Hara at the Premises on several occasions.

15. In response to inquiries made by Tragakis/O'Hara, Davis told them that she had sold the subject property several times in the past and that she knew of no structural problems with the property.

16. On or about January 15, 2002 Tragakis/O'Hara made an offer on the property subject to an inspection of the foundation and retaining wall by a structural engineer within ten (10) days of the acceptance of the offer.

17. On or about January 19, 2002, Cendant, the seller, accepted the offer and Tragakis/O'Hara subsequently retained the services of Angilly to perform the structural inspection.

18. On or about April 12, 2004 in reliance upon the opinions expressed in Angilly's report and representations by Davis and Cendant, Tragakis/O'Hara purchased the property.

19. Since purchase of the property by Tragakis/O'Hara, movements of the foundation have increased dramatically to the point that major corrective action must be taken in order to prevent the property from becoming uninhabitable.

20. From documents subsequently obtained from the office of the Tax Assessor for the Town of Westborough it is clear that Coldwell Banker was instrumental in having certain notations relative to the structural integrity of the Premises changed in the public record. (See Exhibit "A".)

21. Based upon the experience of Davis, personally, and Coldwell Banker with the Premises, it is clear that important information with respect to the structural integrity of the Premises was knowingly withheld from Tragakis/O'Hara even upon their direct inquiry.

3

22. Davis and Coldwell Banker have violated M.G.L. c. 93A by falsely representing that they had no knowledge of any structural problems with the property thereby a false impression was created as to the construction, durability, reliability, safety, strength, life expectancy, utility and maintenance of the Premises.

23. Those actions by Davis and Coldwell Banker constitute a violation of M.G.L. c. 93A, §2(a) and C.M.R. §3.05(1).

24. All of these actions were performed willfully and knowingly.

25. As a result of the unfair and deceptive practices by Davis and Coldwell Banker, Tragakis/ O'Hara have been severely damaged.

26. Those damages include, but are not limited to, the loss of value of the Premises and the expenses they must incur to correct the defects that Davis and Coldwell Banker should have disclosed to them prior to their purchase.

WHEREFORE, the Plaintiffs James W. Tragakis and Susan M. O'Hara, demand judgment against the Defendant, Paulette E. Davis and NRT New England Incorporated d/b/a Coldwell Banker Residential Brokerage, in an amount to be determined at trial, trebled in accordance with M.G.L. c. 93A, plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

## COUNT II

27. Tragakis/O'Hara re-allege paragraphs one through twenty six above as if fully restated herein.

28. On or about February 8, 2002 Tragakis/O'Hara and Cendant executed a Purchase and Sale Agreement for the Premises. (See Exhibit "B".)

4

29. The Seller's Disclosures that were part of the Purchase and Sale Agreement were not fully truthful and forthcoming.

30. Coldwell Banker was the broker for Cendant.

31. Coldwell Banker is owned by Cendant.

32. Therefore, knowledge, actions or inactions of and by Coldwell Banker and Davis can also be attributed to Cendant.

33. Violations of M.G.L. c. 93A have occurred by the misrepresentations in Cendant's Sellers Disclosures because persons for whom Cendant was responsible possessed knowledge of structural problems with the property, a false impression was created as to the construction, durability, reliability, safety, strength, life expectancy, utility and maintenance of the Premises and those actions constitute a violation of M.G.L. c. 93A, §2(a) and C.M.R. §3.05(1).

34. All of these actions were performed willfully and knowingly.

35. As a result of the unfair and deceptive practices by Cendant, Tragakis/O'Hara have been severely damaged.

36. Those damages include, but are not limited to, the loss of value of the Premises and the expenses they must incur to correct the defects that Cendant should have disclosed to them prior to their purchase.

WHEREFORE, the Plaintiffs James W. Tragakis and Susan M. O'Hara, demand judgment against the Defendant, Cendant Mobility Financial Corporation, in an amount to be determined at trial, trebled in accordance with M.G.L. c. 93A, plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

5

## COUNT III

37. Tragakis/O'Hara re-allege paragraphs one through thirty six above as if fully restated herein.

38. On or about January 19, 2002, Tragakis/O'Hara retained the services of Angilly to perform a structural inspection of the Premises.

39. On January 22, 2002 Angilly performed that inspection.

40. On January 23, 2002 Angilly published a report of his inspection and on or about that date provided a copy of said report to Tragakis/O'Hara.

41. As part of the conclusion of the report, inter alia, Angilly stated that, "(t)here were no signs of structural instability. The foundation appears to be complete and there is a low risk of future settlement."

42. On or about April 12, 2004 in reliance upon the opinions expressed in the report, Tragakis/O'Hara purchased the Premises.

43. Since the purchase of the Premises, movements of the foundation have increased dramatically to the point that major corrective action must be taken in order to prevent the property from becoming uninhabitable.

44. Angilly undertook the inspection understanding that Tragakis/O'Hara would rely upon it and was obliged to exercise due care, professional skill and diligence.

45. The failure of Angilly to exercise due care, professional skill and diligence was a breach of contract.

46. By reason of the breach of contract and the fault and neglect of Angilly, Tragakis/O'Hara have been damaged and are obligated to expend additional funds for repairs to the Premises and suffered other consequential damages such as loss of value of the Premises as the result of Angilly's negligent advice.

6

WHEREFORE, the Plaintiffs, James W. Tragakis and Susan M. O'Hara, demand judgment against the Defendant, Robert F. Angilly, Jr., P.E. d/b/a Criterium-Angilly Engineers, in an amount to be determined at trial, plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

## COUNT IV

47. Tragakis/O'Hara re-allege paragraphs one through forty six above as if fully restated herein.

48. By affirmatively representing the settlement of the structure on the Premises was complete, Angilly created a false impression as to the construction, durability, reliability, safety, strength, life expectancy, utility and maintenance of the Premises which Tragakis/O'Hara purchased and that is a violation of M.G.L. c. 93A, §2(a) and C.M.R. §3.05(1).

49. By failing to disclose that he is not licensed as a Registered Professional Engineer in Massachusetts, Angilly violated M.G.L. c. 112, §§ 81D – 81T and c. 93A, §2(a) and C.M.R. §3.16(2).

50. By failing to disclose that he is not licensed to do business as a Registered Professional Engineer in Massachusetts, Angilly violated c. 93A, §2(a) and C.M.R. §3.16(3).

51. All of these actions were performed willfully and knowingly.

52. As a result of the unfair and deceptive practices by Angilly, Tragakis/O'Hara have been severely damaged.

53. Those damages include, but are not limited to, the loss of value of the Premises and the expenses they must incur to correct the defects that Angilly should have disclosed to them prior to their purchase.

WHEREFORE, the Plaintiffs James W. Tragakis and Susan M. O'Hara, demand judgment against the Defendant, Robert F. Angilly, Jr., P.E. d/b/a Criterium-Angilly Engineers, in an

7

amount to be determined at trial, trebled in accordance with M.G.L. c. 93A, plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

## COUNT V

54. Tragakis/O'Hara re-allege paragraphs one through fifty three above as if fully restated herein.

55. Upon information and belief, Angilly operates as a satellite office and/or agent of Criterium.

56. Under the doctrine of respondeat superior, Criterium is responsible for the conduct, actions and inactions of Angilly.

57. The damages suffered by Tragakis/O'Hara are the responsibility of Criterium.

WHEREFORE, the Plaintiffs, James W. Tragakis and Susan M. O'Hara, demand judgment against the Defendant, Criterium Engineers, Inc., in an amount to be determined at trial, trebled in accordance with M.G.L. c. 93A, plus interest, costs, attorneys fees and such other relief at law or equity as this Court deems just and proper.

## COUNT IV

58. Tragakis/O'Hara re-allege paragraphs one through fifty seven above as if fully restated herein.

59. Tragakis/O'Hara purchased a homeowner's insurance policy from USAA.

60. Said policy insures against property damage on an "all-risk" basis.

61. In December 2003 Tragakis/O'Hara made a claim with USAA under the policy.

62. By letter dated February 3, 2004, USAA wrongfully denied the claim.

63. Tragakis/O'Hara subsequently engaged the services of Davidson Engineering, Inc. to perform an inspection of the Premises.

64. Based upon Davidson's report, through Counsel, Tragakis/O'Hara made further demand on

8

USAA or about August 25, 2004.

65. By letter dated September 15, 2004, USAA again wrongfully denied the claim.

66. Tragakis/O'Hara have complied with all conditions precedent necessary to the maintenance of this action and have made repeated demand upon the USAA to be compensated for and on account of the damages incurred to the insured Premises.

67. Tragakis/O'Hara are entitled to the monies demanded and the nonpayment thereof is a breach of contract.

68. Tragakis/O'Hara have been damaged in the estimated amount of $143,110.00 and the damages are ongoing.

69. Tragakis/O'Hara are entitled to be made whole for and on account thereof.

WHEREFORE, the Plaintiffs, Tragakis/O'Hara, hereby demand judgment enter against the Defendant, United Services Automobile Association, in an amount to be determined at trial and that Tragakis/O'Hara be awarded interest, costs, attorney's fees, and such other relief as the Court may deem appropriate.

## COUNT VI – UNFAIR CLAIM SETTLEMENT PRACTICES

### M.G.L. c. 176D, §3(9)

70. Tragakis/O'Hara re-allege paragraphs one through sixty nine above as if fully restated herein.

71. USAA misrepresented policy provisions relating to coverages at issue.

72. USAA failed to effectuate a prompt, fair and equitable settlement of a claim in which liability is reasonably clear.

73. USAA compelled the insureds, Tragakis/O'Hara, to commence litigation to recover amounts due under a policy by unreasonably and unlawfully denying coverage.

WHEREFORE, the Plaintiffs, James W. Tragakis and Susan M. O'Hara, hereby demand

9

judgment enter against the Defendant United Services Automobile Association, in an amount to be determined at trial and that Tragakis/O'Hara be awarded interest, costs, attorney's fees, and such other relief as the Court may deem appropriate.

## COUNT VII- MASS. GEN. L. CH. 93A and 176D

74. Tragakis/O'Hara re-allege paragraphs one through seventy three above as if fully restated herein.

75. Tragakis/O'Hara entered into an insurance contract with USAA in good faith reliance terms thereof as referenced above and contained within said policy.

76. Tragakis/O'Hara have made repeated demand requesting that the USAA honor its obligation to Tragakis/O'Hara under the Policy in accordance with the laws applicable thereto and in particular, USAA's various obligations under M.G.L. c. 176D.

77. USAA has refused to make payment to Tragakis/O'Hara for the losses they have suffered in accordance with the terms of the Policy.

78. USAA has compelled the insureds, Tragakis/O'Hara, to commence litigation to recover amounts due under a policy by unreasonably and unlawfully denying coverage.

79. Said conduct constitutes a violation of M.G.L. c. 93A and M.G.L. c. 176D.

WHEREFORE, the Plaintiffs, James W. Tragakis and Susan M. O'Hara, hereby demand judgment enter against the Defendant, United Services Automobile Association, in an amount to be determined at trial plus an award of triple damages, interest, costs, attorney's fees, and such other relief as this Court may deem appropriate.

The Plaintiff demands a trial by jury on all counts contained in this complaint.

10

James W. Tragakis
Susan M. O'Hara
By their Attorney,


John S. Davagian, II          2/18/2005
BBO # 114740
Davagian & Associates
365 Boston Post Road, Ste. 200
Sudbury, MA 01776-3023
978-443-3443

11

EXHIBIT

"A"

3099

*HUNNEMAN & CO.-COLDWELL BANKER*
*95A Turnpike Road*
*Westborough, MA 01581*
*Telephone (508) 366-8766*
*Fax (508) 870-5956*

*Map 10*
*Parcel 66*

## LETTER OF TRANSMITTAL

**DATE:** 1/22/96

**TO:** Louise

**FROM:** Mary Olson
Hunneman

**RE:** 5 Olde Coach Rd Westboro

**DESCRIPTION:** Structural info.

**NUMBER OF PAGES INCLUDING THIS COVER SHEET:** 5

**THE ABOVE ITEMS ARE SENT:**

_____ For your information
_____ For your files
_____ Per your request
_____ Please sign and return
_____ Reply, with copy to me
_____ Please review and call me

**REMARKS:** _____

_____

_____

_____

_____

**COPIES ALSO FORWARDED TO:** _____

_____



*Heritage Associates*

*21 Cochituate Street*

*Natick, Massachusetts*

*(617) 653-0880*

September 17, 1987



**RECEIVED**

SEP 2 1 1987

TOWN OF WESTBOROUGH
BUILDING DEPARTMENT

Westboro Town Hall
Mr. Dick Bowker
Assistant Building Inspector
Westboro, MA.

RE: <u>MATI RITVAL</u>
    5 OLD COACH ROAD

Dear Mr. Bowker:

We have been working with Mati Ritval over the past few months regarding his property at 5 Old Coach Road.

The purpose of this letter is to advise you that pursuant to corrective measures made by Mr. Ritval, it is our professional opinion the subject building is and will continue to be structurally sound.

If you should have any further questions concerning the foregoing, please advise.

Sincerely,

*John C. Hawley, PE*

John C. Hawley
Structural Engineer

JCH/bn

cc: M. Ritval





LOTS 15 & 14 B
A = 28,041 S.F.

STREAM →

50.00
EASEMENT

20 DRAIN

LOT 16

LOT 14 A

No. 5

RECEIVED

Plg # 162/87

APR 2 2 1987

TOWN OF WESTBOROUGH
BUILDING DEPARTMENT

L = 190.00'

OLDE     COACH     ROAD

I HEREBY CERTIFY THAT THE LOT(S) SHOWN ON THIS PLAN AND THE
BUILDING(S) SHOWN ON SAID LOT(S) ARE LOCATED ON THE GROUND AS
SHOWN AND, AT THE TIME OF CONSTRUCTION, ARE IN CONFORMANCE
WITH THE ZONING LAWS, AND WITH THE BUILDING LAWS AS THEY PER-
TAIN TO ZONING, OF THE TOWN/CITY OF WESTBOROUGH   MASS.

ALL VISIBLE EASEMENTS AND ENCROACHMENTS ARE SHOWN HEREON.
I FURTHER CERTIFY THAT THE ABOVE SHOWN LOT(S) ARE NOT LOCATED
IN A FLOOD HAZARD AREA AS DEFINED ON THE F.I.A. FLOOD HAZARD
BOUNDARY MAPS FOR THE TOWN/CITY OF WESTBOROUGH   MASS.
THIS INSPECTION HAS BEEN PERFORMED IN ACCORDANCE WITH THE AP-
PROPRIATE TECHNICAL STANDARDS AND PROCEDURES FOR MORTGAGE
LOAN INSPECTIONS. IN THE ABSENCE OF MONUMENTATION APPARENT LOT
LINES AS EVIDENCED BY FENCE OR HEDGE LINES, WHICH PROVIDE SUF-
FICIENT ACCURACY FOR THIS CERTIFICATION, HAVE BEEN HELD.

SIGNED
DATE      JAN 30  1985

COMMONWEALTH OF MASSACHUSETTS
ROBERT
&
DRAKE
No. 30328
REGISTERED
LAND SURVEYOR

MORTGAGE INSPECTION PLOT PLAN

IN

WESTBOROUGH   MASS

SCALE  1" = 40  FEET

DRAKE  ASSOCIATES  INC
770 GROVE STREET
FRAMINGHAM          MASS.

DEED REF.
PLAN REF.   BK 462 · PL 112

# TOWN OF
## WESTBOROUGH, MASSACHUSETTS

### OFFICE OF THE BUILDING DEPARTMENT

# BUILDING PERMIT

APPLICANT __Mati T. Ritval__                    ADDRESS __5 Olde Coach, Westborough, M.__

PERMIT TO __Construct__                         NO. OF UNITS __One__
                    type of improvement

PROPOSED USE __Residential__

AT LOCATION __5 Olde Coach Road__
               No       Street

This permit is granted on the condition that construction shall conform to the Massachusetts State Building Code and Zoning By-Laws of the Town regulating the construction and use of buildings, and may be revoked at any time upon violation of any provisions.

All new buildings and additions and alterations to existing buildings require a minimum of three call inspections. (1) Footings, drain tile systems, foundation and basement walls, before back filling the wall and before proceeding with the superstructures. (2) Framing, before roofing and siding and prior to lathing and plastering, duct work, fire stopping and other equipment before it is concealed. (3) Final inspection when building or structure is completed.

Reinforced concrete work inspection must be made after steel is in place and before concrete is poured.

No masonary work shall begin without Building Department approval.

Any work which has been concealed or completed without inspection approval by the department shall be rejected.

Any deviation from the approved plans must be authorized by the approval of revised plans.

An additional permit fee may also be charged predicated on the extent of the variation from the original plans.

Permits are not valid if construction work is not started within six months from date permit is issued.

Final inspection shall be made when the construction work is completed and heating apparatus has been installed. Completion of electrical, plumbing or mechanical work and painting or decorating is not required before the Final Building Inspection.

Certificate of occupancy must be obtained before occupying building.

This permit does not cover the installation of wood burning stoves.

SIGNATURE OF APPLICANT _____    Date __4/27/87__

Permit for ( only ) __Re-construct and expand rear deck__

PERMIT FEE __$25.00 Paid__            INSPECTOR OF BUILDINGS __Richard J. Bauke__

| Inspections | Other Inspections Required | |
|---|---|---|
| 1. Foundation O.K. Deck  Finish O.K. Deck | ELECTRICAL | |
| | PLUMBING | |
| | FIRE CHIEF | |
| 2 | BOARD OF HEALTH | |
| | D.P.W. | |
| 3 (FINAL) | | |

POST THIS PERMIT
MUST BE VISIBLE FROM STREET

162/87



# *The Commonwealth of Massachusetts*
## TOWN OF WESTBOROUGH
# —CERTIFICATE OF OCCUPANCY—

IN ACCORDANCE WITH THE PROVISIONS OF SECTION 120.0 OF THE MASSACHUSETTS STATE BUILDING CODE,
THIS BUILDING LOCATED AT ... 5 Old Coach Rd ........................................
AND OWNED BY .. Mati Ritval ...................... #21/87 .................
HAS BEEN CONSTRUCTED UNDER BUILDING PERMIT NO. 162/87 & 50/7 DATED 4/22/87 ,
AND HAS BEEN CONSTRUCTED IN ACCORDANCE WITH THE ZONING BY-LAWS OF WESTBOROUGH. THE
MASSACHUSETTS STATE BUILDING CODE AND APPLICABLE CODES FOR WHICH PERMITS ARE REQUIRED.

THIS BUILDING MAY BE OCCUPIED AND USED EXPRESSLY FOR ... *residential* ......

INSPECTOR OF BUILDINGS ...*Richard Burkhep*...

FIRE CHIEF ...*James Parker*... 2/12/18

INSPECTOR WIRES ...*Joseph F. Orlando*...

INSPECTOR OF PLUMBING ...*Ralph R. Keyes* 12/1/87...

BOARD OF HEALTH ...*McNulty* 12/1/87...

DATE OF ISSUANCE ...3/5/88...

USE GROUP ...B...

CLASSIFICATION ...Type 4...

This office must be notified of any change
of ownership or classification.

BUILDING DEPT.
TOWN HALL
WESTBOROUGH

**STANDARD FORM**
**PURCHASE AND SALE AGREEMENT** 0202/8006 St., Woburn, MA 01801
(781) 933-2240

**EXHIBIT**

"B"

This _____ **8TH** _____ day of ~~January~~ *February*, 2002

**Cendant Mobility Financial Corporation**

1. **PARTIES AND MAILING ADDRESSES**

   *(fill in)*

   hereinafter called the SELLER, agrees to SELL and
   **James W. Tragakis and Susan M. Ohara, of
   11 Cross Street, Westborough, MA  01581**
   hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the
   following described premises: **The land with the buildings thereon known
   and numbered 5 Olde Coach Road, Westborough, MA  01581**

2. **DESCRIPTION**
   *(fill in and include title reference)*

   **Title Reference: Book 19951, Page 264**

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**

   *(fill in or delete)*

   Included in the sale as a part of said premises are the buildings, structures, and improvements now
   thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all
   wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades,
   screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating
   equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters,
   plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside
   television antennas, fences, gates, trees, shrubs, plants, and, ONLY IF BUILT IN, refrigerators, air
   conditioning equipment, ventilators, dishwashers, washing machines and dryers; and **range, dishwasher
   microwave, refrigerator, indoor grille on island, window blinds, indoor
   ~~outbuildings~~ window shutters, and all light fixtures.**

4. **TITLE DEED**
   *(fill in)*
   *Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER's breach of SELLER's covenants in leases, where necessary.*

   Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to
   the nominee designated by the BUYER by written notice to the SELLER at least seven _____ days
   before the deed is to be delivered as herein provided, and said deed shall convey a good and clear
   record and marketable title thereto, free from encumbrances, except
   (a) Provisions of existing building and zoning laws;
   (b) Existing rights and obligations in party walls which are not the subject of written agreement;
   (c) Such taxes for the then current year as are not due and payable on the date of the delivery of
   such deed;
   (d) Any liens for municipal betterments assessed after the date of this agreement;
   (e) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit
   or materially interfere with the current use of said premises;
   (f) **Buyer to order, and Seller to pay, for title examination.**

5. **PLANS**

   If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan
   with the deed in form adequate for recording or registration.

6. **REGISTERED TITLE**

   In addition to the foregoing, if the title to said premises is registered, said deed shall be in form sufficient
   to entitle the BUYER to a Certificate of Title of said premises; and the SELLER shall deliver with said
   deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. **PURCHASE PRICE**
   *(fill in); space is allowed to write out the amounts if desired*

   The agreed purchase price for said premises is **Four Hundred Thirty-Seven Thousand
   and 00/100 ($437,000.00)** ----------------------- dollars, of which

   | | | |
   |---|---|---|
   | $ | 20,250.00 | have been paid as a deposit this day and |
   | $ | 1,000.00 | **paid with offer to purchase** |
   | $ | 415,750.00 | are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s), **or by Bank attorney's check provided "good funds" are deposited therein.** |
   | $ | | |
   | $ | 437,000.00 | TOTAL |

COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991
GREATER BOSTON REAL ESTATE BOARD



All rights reserved. This form may not be copied or reproduced in
whole or in part in any manner whatsoever without the prior express
written consent of the Greater Boston Real Estate Board.

**TIME FOR PERFORMANCE DELIVERY OF DEED** *(fill in)*

Registry of Deeds, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement. ☆ **or at the office of Buyers' lender's attorney**

**9. POSSESSION AND CONDITION OF PREMISE.** *(attach a list of exceptions, if any)*

Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled personally to inspect said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

**10. EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM** *(Change period of time if desired).*

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises shall be ~~forthwith refunded and with the provisions hereof, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto, unless~~ the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty ---- **30** ---- days, **or until the expiration of Buyers' mortgage committment**

**11. FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.**

**/ any such** **/pursuant to #10 above**
If at the expiration of ~~the~~ extended time ~~the~~ / the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

**12. BUYER's ELECTION TO ACCEPT TITLE**

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either

(a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or

(b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

**13. ACCEPTANCE OF DEED**

**and recording**
The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

**14. USE OF MONEY TO CLEAR TITLE**

To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded ~~simultaneously with the delivery of said deed~~ **in conformance with local conveyancing custom**

**15. INSURANCE** *Insert amount (list additional types of insurance and amounts as agreed)*

Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:

*Type of Insurance*           *Amount of Coverage*

(a) Fire and Extended Coverage           **'$ as presently insured**

(b)
**All risk of loss to remain with Seller until conveyance**

**16. ADJUSTMENTS** *(list operating expenses, if any, or attach schedule)*

~~Collected rents, mortgage interest,~~ Water and sewer use charges, ~~operating expenses (if any) according to the schedule attached hereto or set forth below,~~ and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. ~~Uncollected rents for the current rental period shall be apportioned if and when collected by either party.~~

Case 4:05-cv-40012-FDS   Document 2   Filed 01/26/2006   Page 1 of 1

| | |
|---|---|
| 17. ADJUSTMENT OF UNASSESSED AND ABATED TAXES | If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. |
| 18. BROKER's FEE (fill in fee with dollar amount or percentage; also name of Brokerage firm(s)) | A Broker's fee for professional services of as per the listing agreement is due from the SELLER to RE/MAX First Choice and Coldwell Banker Hunneman when title passes, and Seller has received the full purchase price, and not otherwise: the Broker(s) herein, but if the SELLER pursuant to the terms of clause 21 hereof retains the deposits made hereunder by the BUYER, said Broker(s) shall be entitled to receive from the SELLER an amount equal to one-half the amount to retained or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser. |
| 19. BROKER(S) WARRANTY (fill in name) | The Broker(s) named herein RE/MAX First Choice and Hunneman Coldwell Banker warrant(s) that the Broker(s) is(are) duly licensed as such by the Commonwealth of Massachusetts. |
| 20. DEPOSIT (fill in name) | All deposits made hereunder shall be held in escrow by Hunneman Coldwell Banker as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent may retain all deposits made under this agreement pending instructions mutually given by the SELLER and the BUYER. Funds shall be held in an insured escrow account with all interest split equally between Buyer and Seller. |
| 21. BUYER's DEFAULT; DAMAGES | If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages unless within thirty days after the time for performance of this agreement or any extension hereof, the SELLER otherwise notifies the BUYER in writing, and this shall be Seller's sole and exclusive remedy for any default by the Buyers hereunder. |
| 22. RELEASE BY HUSBAND OR WIFE | The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises. |
| 23. BROKER AS PARTY | The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing. |
| 24. LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |
| 25. WARRANTIES AND REPRESENTATIONS (fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s):  None |
| 26. MORTGAGE CONTINGENCY CLAUSE (omit if not provided for in Offer to Purchase) | See paragraph #37 of Rider attached hereto<br>7 In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional or other institutional mortgage loan of $ 403,750.00 at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before February 13 , 2002 the BUYER may terminate this agreement by written notice to the SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before. |

27. **CONSTRUCTION OF AGREEMENT** This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28. **LEAD PAINT LAW** The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29. **SMOKE DETECTORS** The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law.

30. **ADDITIONAL PROVISIONS** The initialed riders, if any, attached hereto, are incorporated herein by reference.

Cendant Mobility Standard Addendum and Disclosures; attached hereto and made a part hereof.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED
LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

Cendant Mobility Financial Corporation

by: _Joanne Stanton_
SELLER (or spouse)

_James W. Tragakis_
BUYER  James W. Tragakis

Agent for Cendant Mobility Financial Corporation, subject to Seller becoming contractual owner.

_MMMM Ohara_
SELLER

BUYER  Susan M. Ohara

Broker(s)

---

## EXTENSION OF TIME FOR PERFORMANCE

Date _____

The time for the performance of the foregoing agreement is extended until _____ o'clock _____ M. on the _____ day of _____ 19____, time still being of the essence of this agreement as extended. In all other respects, this agreement is hereby ratified and confirmed.
This extension, executed in multiple counterparts, is intended to take effect as a sealed instrument.

SELLER (or spouse) _____        SELLER _____

BUYER _____        BUYER _____

Broker(s)

## RIDER TO PURCHASE AND SALE AGREEMENT

Seller:     Cendant Mobility Financial Corporation
Buyer:      James W. Tagakis and Susan M. Ohara
Premises:   5 Olde Coach Road, Westborough, MA
Date:       February 8 , 2002

31.  At the time of the delivery of the deed hereunder, the Seller shall deliver to the Buyer, and where appropriate shall execute, the following:

(a)  an affidavit which includes the Seller's social security number and which provides that the Seller is not a foreign person subject to withholding taxes as required by section 1445 of the Internal Revenue Code of 1954, as amended;

(b)  such instruments as the Buyer's title insurance company or counsel may reasonably require including, but not limited to, an affidavit with respect to:

(i)  mechanic's or materialmen's liens with regard to the premises sufficient in form and substance to enable the title insurance company to delete its standard ALTA exception for such liens;

(ii)  there being no parties in possession of or entitled to possession of the premises.

(iii)  there being no urea formaldehyde foam insulation (UFFI) contained in the premises.

(iv)  Smoke Detector Certification

(v)  FNMA Purchase and Vendor 1009

(vi)  Information required to file Form 1099S

32.  It is understood and agreed by the parties that the premises shall not be in conformity with the title provisions of this Agreement unless:

(a)  All buildings, structures and improvements, including, but not limited to, any driveways, garages, and all means of access to the premises, shall be located completely within the boundary lines of said premises and shall not encroach upon or under the property of any other person or entity;

(b)  No building, structure or improvement of any kind belonging to any other person or entity shall encroach upon or under said premises; and

(c)  The premises shall abut or have access to a public way, duly laid out, or accepted as such by the city or town in which said premises are located.



(d) Title to the premises is insurable, for the benefit of the Buyer, by a title insurance company, in a fee owner's policy of title insurance at normal premium rates, in the American Land Title Association form currently in use.

33. The Buyer and their designees shall have the right of access to the premises prior to the delivery of the deed for the purpose of measuring the same or showing the premises to prospective mortgage lenders. Said right of access shall be exercised only in the presence of Seller or the brokers named herein and only after reasonable prior notice to the Seller.

34. Buyer shall be entitled to an extension of the closing date for a period of up to seven (7) days if Buyer's mortgage lender or the attorney for Buyer's mortgage lender is not able to close at the time set for performance herein.

35. Seller represents to the best of Seller's knowledge and belief:

(a) There is not now and has never been in the Premises any urea formaldehyde foam insulation (UFFI) or unsafe concentrations of radon gas or underground storage tanks or any substances which constitute hazardous waste or material under Federal or State law;

(b) The septic system serving the premises is in good working order and is located entirely within the premises and no portion of any septic system serving any other property is located within the premises.

(c) If applicable, the well serving the premises is in good working order and is located entirely within the premises.

36. The Seller states that no notice or communication has been actually received by Seller from any public authority that there exists with respect to the premises any condition which violated any municipal, state or federal law, rule or regulation, which has not been corrected.

37. The Buyer's obligations under this Agreement are contingent upon Buyer's receipt prior to 5:00 p.m. on February 18, 2002 of a written commitment letter at prevailing rates and terms, containing only conditions which can reasonably be met by Buyer, and not contingent upon the sale of any other property, from a conventional mortgage lender for a mortgage loan (which may include a first and second mortgage) equal to the amount of $360,000.00 to be used by Buyer in purchasing the premises. Should the Buyer be unable to obtain such a commitment letter despite diligent efforts, Buyer may cancel this Agreement by written notice to Seller prior to the expiration of said time whereupon all obligations of the parties under this Agreement shall cease and Buyer's deposit shall be promptly returned in full. Buyer's failure to give such notice shall be a waiver of the Buyer's right to cancel under this paragraph. Buyer shall not be required to apply to more than one mortgage lender to satisfy the diligent efforts requirement.

38. Pursuant to Title 5 of the State Environmental Code (310 CMR 15.301), the on-site wastewater system (the "septic system") which serves the property shall be inspected in connection with the transfer of the property. At or before closing, Seller shall deliver to Buyer a conformed copy of the "Subsurface Service Disposal System Inspection Form" on file with the local Board of Health indicating that the system is in compliance with the provisions of Title 5. Seller shall be responsible for all costs associated with the repair or replacement of the septic system, if necessary, to satisfy the provisions of Title 5.

39. Any notice required under this Agreement shall be deemed duly served and delivered if sent by registered or certified mail, postage prepaid, return receipt requested, or by facsimile transmission to the numbers listed below:

in the case of the Seller to:

Robert F. Matson, Esq.
McElhiney & Matson
607 Main Street
Woburn, MA 01801
Tel. No. (781) 933-2240
Fax No. (781) 933-4061

and in the case of the Buyer to:

Gary Sanginario, Esq.
Gilmartin, Magence & Ross, P.C.
376 Boylston Street
Boston, MA 02116
Tel. No. (617) 375-9000
Fax No. (617) 375-5700

40. Seller agrees to credit Buyer at closing a sum equal to the greater of three (3%) percent of Buyer's mortgages or $12,000.00 at closing to be applied towards Buyer's closing costs.

SELLERS:
Cendant Mobility Financial Corporation

By: _Jeanne Stanton_

Agent for Cendant Mobility Financial
Corporation, subject to Seller becoming
contractual owner.

BUYERS:

_James W. Tragakis_
James W. Tragakis

_Susan M. Ohara_
Susan M. Ohara

W:\Linda\Gary\Tragakis B Rdr.doc

**To the Buyer(s):** This document contains important information concerning the referenced property. You are urged to review its contents carefully.

File # 1795380

Owner's Name: Chris J. Olson

Property Address:
5 Olde Coach Rd
Westborough, MA 01581

This Addendum supersedes and overrides any conflicting clauses or statements in the attached Agreement.

**Ownership:**
The terms and conditions of this agreement which apply to Seller are SUBJECT TO the Seller becoming contractual owner.

**Earnest Money:**
In the event of a default in consummating this purchase by the Buyer(s), it is agreed that any earnest money or deposit shall be retained by the Seller as liquidated damages.

**Insurance Premiums:**
Insurance premiums shall not be prorated. All existing insurance policies will be canceled at the time of closing.

**Taxes / Assessments / Bonds:**
Tax, assessment, and bond prorations shall be based on the last known bill or upon the tax assessor's latest valuation and the current tax or assessment rate, and shall be prorated at the time of closing. If it is common practice and/or local custom to have no prorations at the closing there shall be no prorations. There will be no re-proration or re-adjustment of taxes based on actual tax amounts after the date of closing. This paragraph shall supersede and override any other clauses or statements in this agreement that concern taxes, assessments or bonds.

**New Mortgage Information:**
Mortgage discount points, if any, shall be paid by the (Buyer) (Seller), but are not to exceed $_____ on ___%. Should the lender's commitment be conditioned on any repairs, the Seller reserves the right to cancel this agreement, and return all earnest money deposits to the Buyer(s) with no further obligation by Seller. It is expressly agreed and understood that neither party will be required to complete this transaction should the (FHA Conditional Commitment) (Certificate of Reasonable Value) (Lender's Appraisal) vary from the agreed sales price. Buyers assume all risk of any changes in the interest rate and mortgage discount points, and agree to close this transaction, regardless of any such changes.

**Arbitration:**
Seller does not agree to participate in any arbitration or mediation in the event of any dispute arising from this transaction.

**Disclosure:**
Buyer(s) agree to execute the attached Seller's Real Estate Disclosure Acknowledgement, as a part of this agreement. At closing to confirm having had an opportunity to review their contents, Buyer(s) shall re-sign the Seller's Real Estate Disclosure Acknowledgement.

**Condition:**
Buyer(s) acknowledge that Seller has acquired the property in a relocation transaction, and that Seller is acting in the capacity of a non-occupant contractual owner or representative of the owner and has limited first-hand knowledge of the property.

Page 1

STDADDEN (04/12/00)

*Condition (continued):*  Neither Seller nor Seller's agent has made any warrantee or representations, either expressed or implied (except as may have been given to the Buyer(s) in writing, as to the condition of the premises. No representations or warranties made by seller shall survive the closing. Buyer(s) acknowledge that they have the opportunity to inspect the property, or have the same inspected by others on their behalf. Except for any repairs specifically required to be made by Seller in accordance with the terms of this Agreement or attached hereto, Buyer(s) understand that they are purchasing the property in "AS-IS" condition, subject only to any specific items set forth in this Agreement.

Buyer(s) acknowledge that they have, per the terms of this Agreement, the opportunity to verify any inspections or matters disclosed on a Real Estate Disclosure, or perform their own inspections to the property. Buyer(s) shall report, in writing, the results of any such inspection(s), and repair requests. Buyer(s) shall supply Seller with a copy thereof, within ten (10) days after acceptance of this Agreement. Failure to do so shall be deemed a waiver of the Buyer's right to inspect and request repairs otherwise permitted under this Agreement. In the event of any claim or demand by Buyer(s), as a result of Buyer's inspections, the Seller shall have the option of:

1. Making said items operational or functional, agreeing to the expense in writing, or

2. Giving the Buyer(s) a credit for items, agreeing to the credit in writing, or

3. Cancelling this Agreement and refunding the Buyer's earnest money or other deposit.

In any case Seller shall not be responsible for the quality of any repairs which may be required, and Buyer(s) agree to look solely to the person or company performing any such repairs. If a credit is given, Buyer(s) agree to sign a release.

In order for the Buyer(s) to verify that the property is in the same physical condition, ordinary wear and tear excepted, as at the signing of this agreement, Buyer(s) have the right to make a final walk-through no less than seventy-two (72) hours prior to scheduled closing and shall inform Seller in writing of any objections within twenty-four (24) hours thereafter.

*Closing:*  Buyer(s) acknowledge that title to the property may be conveyed by someone other than Seller. Buyer(s) agree that the closing process shall be handled by Seller's closing agent, unless Buyer's lender, if any, requires otherwise.

If Buyer(s) purchase title insurance, Buyer(s) agree to order and purchase title insurance from an agent mutually agreed upon by Buyer and Seller which is approved by the Buyer's lender.

The closing of this sale and acceptance of a deed by Buyer(s) shall constitute acknowledgment that the condition of the premises and systems contained therein are acceptable and Seller shall have no further responsibility or obligation concerning the property, and Buyer(s) waive all rights they may have concerning the condition of the property.

Any and all credits granted by the Seller to the buyer must appear on the HUD-1 Closing Statement. Seller shall not have any obligation to grant any credit that does not appear on the HUD-1 Closing Statement.

*Acceptance:*  This Agreement is subject to Seller's approval, which shall be evidenced only by full execution of this Agreement.

Special Provisions: _____

Agent for Cendant Mobility Financial
Corporation, subject to Seller becoming
contractual owner

Seller: CENDANT MOBILITY FINANCIAL CORPORATION

By: *Joanne Stanton*  1/23/02

Buyer: _____  Date: 1/16/02

Buyer: _____  Date:

Co-Buyer _____

Buyer Phone Numbers: REQUIRED

Home: 508-366-2491  Work: 617-387-0441

Co-Buyer Phone Number: REQUIRED

Home: _____  Work: _____

STDADDEN (04/18/00)

Page 2

Re:        File #: 1298380
           5 Olde Coach Rd
           Westborough, MA 01581

Buyer(s) acknowledge that Cendant Mobility has delivered copies of the following disclosure documents to Buyer(s) which Buyer(s) have read and understand: (Acknowledge by initialing to the left of each item listed and signing below.)

| INITIALS | REPORT | # OF PAGES | DATED | PREPARED BY |
|----------|--------|------------|-------|-------------|
|  | State Disclosure |  |  | Home Owner(s) |
|  | HRDS | 2 | 12/21/01 | Homeowner |
|  | LP DISC | 2 | 12/21/01 | Homeowner |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Pending reports have been ordered but have not yet been received.  *  These reports will be provided to you upon receipt.

Buyer(s) acknowledge that they have had, or will have had, prior to closing, the opportunity to investigate the subject matter of the aforementioned disclosures on their own and have, or will have, investigated such to their satisfaction, or waived such investigation.

Neither Cendant Mobility nor Cendant Financial Corporation have independently verified the contents of these documents and are not responsible for their accuracy.

Buyer(s) acknowledge and agree that the purchase price of the property and other terms and conditions of this purchase agreement were negotiated with full knowledge and disclosure of the contents of the aforementioned disclosures; that said purchase price reflects the agreed-upon value of the property AS IS; including the aforementioned disclosures; to take the property subject to the disclosures; and that Cendant Mobility shall have no responsibility or liability therefor.

Buyer(s) may wish to obtain professional advice and or/ inspections of the property and to provide for appropriate provisions in the contract between Buyer(s) and Seller with respect to any advice/ inspections/ defects.

Note: You may also wish to have your broker complete and provide you with a similar disclosure statement.

*Buyer(s) closing this transaction prior to receiving all the above reports shall constitute buyer's waiver of the right to receive and review those reports.

Dated: 1-28-02

Witness:

Buyer:

Buyer:

SLR_DSCL (6/28/01)



Please complete this Lead Paint Disclosure as appropriate for your health. Your responses shall be relied upon by Conduit Mobility and its affiliates in the appraisal and/or purchase process, so your answers must be complete and accurate. Conduit Mobility must receive a completed Lead Paint Disclosure before submitting an offer to you. Copies of this disclosure will be provided to all potential purchasers of your property.

File #: 1298520

Seller's Name: Carlist Olson

Property Address:
3 Olde Coach Rd
Westborough, MA 01581

## Lead Paint Disclosure (Sale)
### Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

### Lead Warning Statement

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

Seller's Disclosure (Initial)

(a) The residential dwelling located on the property was built (choose one below and put initials by choice):

___CD__ / _DCO_
Owner   Co-Owner

In 1978 or thereafter (if you initial this line, please disregard (b) and (c) below and sign and date where indicated at the bottom of this form).

_____ / _____
Owner   Co-Owner

Prior to 1978.

(b) Presence of lead-based paint and/or lead-based paint hazards (choose one below and put initials by choice):

_____ / _____
Owner   Co-Owner

Known lead-based paint and/or lead-based paint hazards are present in the housing (explain on a separate sheet of paper, sign it, and attach it to this form).

__CD__ / _DCO_
Owner   Co-Owner

Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(c) Records and reports available to the seller (choose one below and put initials by choice):

_____ / _____
Owner   Co-Owner

Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents on a separate sheet of paper, sign it, and attach it to this form).

__CD__ / _DCO_
Owner   Co-Owner

Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

LEADSALE (031496)
Page 1

Purchaser's Acknowledgment (Initial)

_____ (d) Purchaser has received copies of all information listed and on any attached sheets above.
Purchaser Co-Purchaser

_____ (e) Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.
Purchaser Co-Purchaser

_____ (f) Purchaser must choose either (i) or (ii) below and put Purchaser's initials next to the choice made:
Purchaser Co-Purchaser

_____ _____ (i) The obligations of Purchaser under the purchase and sale agreement are contingent upon
Purchaser Co-Purchaser    Purchaser obtaining a risk assessment or inspection of the property for the presence of lead-based
paint and/or lead-based paint hazards at Purchaser's expense prior to midnight of the tenth
calendar day after Purchaser executes this addendum. This contingency will automatically
terminate at that time unless, prior to that time, Purchaser (or Purchaser's agent) delivers to Seller
(or Seller's agent) a written contract addendum listing the specific existing lead paint-based
deficiencies and corrections needed, together with a copy of the inspection and/or risk
assessment report. Seller may, at Seller's option, within 5 days after receipt of Purchaser's
proposed addendum, elect in writing to provide Purchaser with a credit for the costs of correcting
the condition(s) at the time of settlement. If Seller does not elect to provide Purchaser with a
credit, or if Seller makes a counter-offer, Purchaser shall have 5 days to respond to the counter-
offer or remove this contingency and take the property in "as is" condition or the purchase and
sale agreement shall become void. Purchaser may remove this contingency at any time by
written notice to Seller.

_____ (ii) Purchaser waives the opportunity to conduct a risk assessment or inspection of the property for
Purchaser Co-Purchaser    the presence of lead-based paint and/or lead-based paint hazards.

Agent's Acknowledgment (Initial)

_____ (g) Agent has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her
responsibility to ensure compliance.

Certification of Accuracy

The following parties have reviewed the information above and on any attached sheets and certify, to the best of their knowledge, that
the information provided by the signatory is true and accurate.

| | | | |
|---|---|---|---|
| Seller _____ | 12-21-01 Date | Seller David C. Ol_____ | 12/21/01 Date |
| Agent _____ | Date | Agent _____ | Date |
| Purchaser _____ | Date | Purchaser _____ | 1/22/02 Date |

LRADRSALE (REVISED)
Page 2

buyers
'iaitials    X



Complete this form for your home. This
information will be relied upon by Cendant
Mobility and he affiliated in the appraisal
and/or purchase process, so your answers must
be complete and accurate. Although this is not
a warranty it will be presented to potential
buyers as your representation of the condition
of your home. Please complete this form and
return it promptly to your Client Services
Consultant.

File # 2298360

Owner's Name: Chmin Ditos

Property Address:
5 Olde Coach Rd
Westborough, MA 01581

Age of Property: _____

## Terms of Disclosure:

The Seller discloses the following information with the knowledge that, even though this is not a warranty, prospective Buyers may rely on this information in deciding whether and on what terms to purchase the property. The Seller authorizes this information to be provided in connection with any actual or anticipated sale of the property. The following are representations made by the Seller and are not the representations of any agent(s). This information is a disclosure, and is not intended to be part of any contract between the Buyer and Seller. I/We further understand that an offer to purchase will not be made until this disclosure is completed.

## A. The items checked below will remain with the subject property:

| | | | |
|---|---|---|---|
| ☒ Range | ☐ Washer | ☐ Humidifier | ☐ Central Vacuum |
| ☒ Oven | ☒ Washer/Dryer Hookups | ☐ Evaporator Cooler(s) | ☐ T.V. Antenna |
| ☐ Microwave | ☐ Dryer | ☐ Satellite Dish | ☐ Public Sewer System |
| ☐ Refrigerator | ☐ Security Gate | ☐ Intercom | ☐ Septic Tank |
| ☒ Dishwasher | ☐ Smoke Detectors | ☐ Sprinklers | ☒ Sump Pump |
| ☐ Trash Compactor | ☐ Fire Alarm | ☐ Sauna | ☒ Patio/Deck |
| ☒ Garbage Disposal | ☐ Central Heating | ☐ Pool | ☐ Built-in Barbecue |
| ☒ Window Screens | ☐ Central Air Conditioning | ☐ Spa | ☐ Gazebo |
| ☒ Rain Gutters | ☐ Wall/Window Air Conditioner | ☐ Hot Tub | |

| | | | |
|---|---|---|---|
| Water Softener → | ☐ Owned | ☐ Leased | |
| Garage → | ☒ Attached | ☐ Not Attached | ☐ Carport |
| | ☐ Garage Door Opener | # of Remote Controls | _2_ |
| Pool/Spa Heater → | ☐ Gas | ☐ Solar | ☐ Electric |
| Water Heater → | ☐ Gas | ☐ Solar | ☐ Electric  oil |
| Water Heater → | ☐ Owned | ☐ Rented | |
| Water Supply → | ☐ City | ☐ Well | ☐ Private Utility   ☐ Other |
| Gas Supply → | ☐ Utility | ☐ Bottled | |
| Security System → | ☐ Owned | ☐ Rented | ☐ Monitoring Contract/Fee |

Exhaust Fan(s) in: Master bath                  110 Volt Wiring in: Kitchen
Fireplace(s) in: Den, Living Area, Family /Gas Stove _____
Roofing Type: Asphalt   Approximate Age: 12 yrs Approx   If yes, explain. ☐ Yes   ☐ No
       Single

Are there, to the best of your (Seller's) knowledge, any of the above that are not in operating condition?
☐ Yes   ☒ No                    If yes, describe... (attach additional sheets if necessary)

_____
_____
_____
_____
_____
_____

DISCLOSU (10/29/01)
PAGE 1

Cendant Mobility Services Corporation

**B.** If you (Seller) are aware of any defects/malfunctions in any of the following, check space(s) below. (Attach additional sheets to explain if necessary.)

- ○ Interior Walls
- ○ Foundation
- ○ Walls/Fences
- ○ Other Structural Components (Describe):

- ○ Ceiling
- ○ Insulation
- ○ Electrical Systems

- ○ Windows
- ○ Exterior Walls
- ○ Plumbing/Sewer/Septic

- ○ Sidewalks
- ○ Driveways
- ○ Exterior Siding

- ○ Roads
- ○ Doors
- ○ Heating System

- ○ Slabs
- ○ Floors

**C.** Are you (Seller) aware of any of the following:

| | | Yes | No |
|---|---|---|---|
| 1. | Does your home directly border a public road? (If so, please explain) | ● Yes | ○ No |
| 2. | Features shared with adjoining landowners (i.e., walls, fences, driveways) whose use or responsibility for maintenance may have an effect on the property. | ○ Yes | ● No |
| 3. | Encroachments, extensions or similar matters that may affect your interest in the property | ○ Yes | ● No |
| 4. | Room additions, structural modifications, or other alterations or repairs made by you or a prior owner without necessary permits or in noncompliance with building codes. | ○ Yes | ● No |
| 5. | That the property is located on or near an active or former landfill (compacted or otherwise), at an environmentally hazardous site. | ○ Yes | ● No |
| 6. | Any settling from any cause, or slippage, sliding, or other soil problems. | ○ Yes | ● No |
| 7. | Water damage, flooding, drainage or grading problems. | ○ Yes | ● No |
| 8. | Damage to property or structures from fire, earthquakes, floods, or landslides. | ○ Yes | ● No |
| 9. | Zoning violations, non-conforming uses, violations of "setback" requirements. | ○ Yes | ● No |
| 10. | Neighborhood noise problems or other nuisances. | ○ Yes | ● No |
| 11. | Deed restrictions or other... | ○ Yes | ● No |
| 12. | Is the type of siding on your home one of the following: | ○ Yes | ● No |
| | ○ Composition Based or ○ Cementitious or ○ Synthetic Stucco) | | |
| | ○ Composition Based or ○ Cementitious or ○ Synthetic Stucco) | | |
| 13. | Any "common area" (i.e., pools, tennis courts, walkways, or other co-owned areas). | ○ Yes | ● No |
| 14. | Any notices of abatement or citations against the property. | ● Yes | ○ No |
| 15. | Any lawsuits against you affecting or threatening to affect the property. | ○ Yes | ● No |
| 16. | That the home has ever been tested for radon gas. | ○ Yes | ● No |
| | If radon remediation was requested was the work done? If yes, when? _____ (date) | | |
| 17. | If radon remediation was requested was the work done? If yes, when? | ○ Yes | ● No |
| 18. | That the home contains ○ Asbestos or ○ Lead-Based paint. | ○ Yes | ● No |
| 19. | Any evidence of any treatments/repairs for termite, structural pest or rodent infestation. | ○ Yes | ● No |
| 20. | That there is now, or has ever been, any underground storage tank(s) on the property. | ○ Yes | ● No |
| 21. | Have you experienced or do you have knowledge of any problem with the tank(s) such as leakage. | ○ Yes | ● No |
| 22. | What materials are, or were, stored in the tank(s)? | ○ Yes | ● No |
| 23. | Are any title holders not U.S. citizens? | ○ Yes | ● No |
| 24. | Any special assessment? If yes, Type? _____ Amount? | | |

If the answer to any of these is yes, explain (Attach additional sheets if necessary)

Seller certifies that the information herein is true and correct to the best of the Seller's knowledge as of the date signed by the Seller. Seller ● is occupying the property ○ is not occupying the property ○ moved out on ___ (date).

_____ Seller

Date: 12-21-01

_____ David C. Olson Seller

Date: 12/21/01

buyers initials X _____ X _____

(c). Records and reports available to the seller (choose one below and put initials by choice):

____ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents on a separate sheet of paper, sign it, and attach it to this form).

**Yes** Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (Initial)**

(d)    Purchaser has received copies of all information listed and on any attached sheet above.

(e)    Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home*.

(f)    Purchaser must choose either (i) or (ii) below and put Purchaser's initials next to the choice made:

(i) The obligations of Purchaser under the purchase and sale agreement are contingent upon Purchaser obtaining a risk assessment or inspection of the property for the presence of lead-based paint and/or lead-based paint hazards at Purchaser's expense prior to midnight of the tenth calendar day after Purchaser executes this addendum. This contingency will automatically terminate at that time unless, prior to that time, Purchaser (or Purchaser's agent) delivers to Seller (or Seller's agent) a written contract addendum listing the specific existing lead paint-based deficiencies and corrections needed, together with a copy of the inspection and/or risk assessment report. Seller may, at Seller's option, within 5 days after receipt of Purchaser's proposed addendum, elect in writing to provide Purchaser with a credit for the costs of correcting the condition(s) at the time of settlement. If Seller does not elect to provide Purchaser with a credit, or if Seller makes a counteroffer, Purchaser shall have 3 days to respond to the counter-offer or remove this contingency and take the property in "as is" condition or the purchase and sale agreement shall become void. Purchaser may remove this contingency at any time by written notice to Seller.

(ii) Purchaser waives the opportunity to conduct a risk assessment or inspection of the property for the presence of lead-based paint and/or lead-based paint hazards.

**Agent's Acknowledgment (Initial)**

(g)    Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and on any attached sheets and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate. The undersigned approve and accept this addendum and acknowledge this addendum to be part of the purchase and sale agreement.

| | |
|---|---|
| _Karen Stepien / HG_ ____ 12/29/01 | CENDANT MOBILITY FINANCIAL CORPORATION ____ Date |
| CENDANT MOBILITY FINANCIAL CORPORATION ____ Date | as Seller |
| as Seller | |
| Agent ____ Date | Agent ____ Date |
| _signature_ ____ 1/8/02 | _signature_ |
| Purchaser ____ Date | Purchaser ____ Date |

Property (05/15/00)
Page 2

Cendant Mobility Financial Corporation

File #: 1228310

## Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards

**Lead Warning Statement**

This addendum is made a part of the purchase and sale agreement dated ___JAN 2002___ between Cendant
Financial Corporation (Seller) and _____ (Purchaser) for the property located at 8
Olde Coach Rd., Westborough, MA 01581.

In the event any provision of this addendum conflicts in whole or in part with any term or condition of the purchase and sale
agreement or any other addendum, the provisions of this addendum shall control.

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified
that such property may present exposure to lead from lead-based paint that may place young children at risk of developing
lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning
disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular
risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any
information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of
any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended
prior to purchase.

**Seller's Disclosure (Initial)**

Purchaser hereby acknowledges that Seller is a non-occupant seller. As a non-occupant, Seller has no knowledge regarding the
presence or lack thereof of any lead-based paint and/or lead-based paint hazards on the property. Seller has provided Purchaser with a
lead-based paint disclosure form executed by the party from whom Seller obtained its ownership interest. Seller does not make any
guarantees, warranties or representations regarding the accuracy of the contents of such disclosure statement. Seller has not
performed any lead-based paint or lead-based paint hazard inspections or risk assessment of the property. Intact lead-based paint that
is in good condition is not necessarily a hazard; Seller has provided Purchaser with a copy of the EPA pamphlet *Protect Your Family
From Lead In Your Home* which contains more information.

(a)     The residential dwelling located on the property was built (choose one below and put initials by choice):

   _WB_    In 1978 or thereafter (if you initial this line, please disregard (b) and (c) below and sign and date where indicated on
the bottom of this form).

   _____    Prior to 1978.

(b)     Presence of lead-based paint and/or lead-based paint hazards (choose one below and put initials by choice):

   _____    Known lead-based paint and/or lead-based paint hazards are present in the housing (explain on a separate sheet of
paper, sign it, and attach it to this form).

   _WB_    Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(Exhibits revisions)
Page 1

# SELLER'S STATEMENT ON PROPERTY CONDITION

Date: **12/21/01**     Property Address: **5 OLDE COACH ROAD**

**WESTBOROUGH MA 01581-3120**

## NOTICE TO BUYERS AND SELLERS - PLEASE READ

1. The information contained in this statement has been completed by the Seller to the best of his/her/ their/its personal knowledge, information and belief. The Seller understands that a copy of this statement will be furnished to any prospective Buyer of the property. The broker/realtor has not prepared or provided any of the information contained herein.

2. All information in this statement is subject to verification by the Buyer. The broker/realtor is not responsible for the accuracy of any of such information.

3. Neither Seller nor broker/realtor has made any representation, warranty or guaranty as to the condition of the property or the information contained herein.

4. Buyer has been advised to obtain independent counsel and/or professional advisors to verify the condition of the property and investigate all matters related to the property, including, without limitation, the information contained in the statement.

5. Neither Seller nor broker/realtor is an expert on any of the matters described in this statement, nor have they made any independent investigation of said matters.

6. IF APPLICABLE (estates and bank OREO): Seller has never occupied the property and has acquired the property either through foreclosure, by deed in lieu of foreclosure, or as a result of the death of the former owner(s) of the property. Seller has had the property inspected. A copy of said inspection report is available for review by Buyer but only with the understanding and agreement that: neither Seller nor broker/realtor is responsible for the accuracy of the information contained in said report; that neither Seller nor broker/realtor is making any representation or warranty about the information contained in said report; and that Buyer will not rely on the information contained in said report in deciding whether to purchase the premises.

If owned by realty trust, identify all trustees and beneficiaries: _____ (if different)

Age of Structure: 12/2/ 23 yrs.      Years Owned: 3 1/25   OLDE COACH ROAD
Years occupied by Seller: ____3 1/2 _____

Number of current residents: ___3___      If vacant, date of last occupancy: __/__/__      WESTBOROUGH  MA  01581-3120

Year-Round? ___YES___      Seasonal Living? _____

Number of bedrooms: ___4___

Type of Deed _____

If Registered Land, location of original Certificate of Title: _____      Copy attached?  ☐ Yes  ☐ No

Did Seller obtain a title insurance policy when she/he/they purchased the premises?
**IF SO, PLEASE ATTACH A COPY OF POLICY.**                                          ☐ Yes  ☒ No

# of Parcels: _____ Lot Size: _____ sq. ft. Plot Plan attached?

If the deed refers to a recorded plan, do you have a copy?                          ☐ Yes  ☐ No
**IF SO, PLEASE ATTACH A COPY OF THE PLAN.**

Has Seller/Owner conveyed any portion of the property originally deeded to him/her/them?  ☐ Yes  ☐ No  ☒ N.A.

**HAVE YOU EVER OR ARE YOU CURRENTLY EXPERIENCING ANY PROBLEMS WITH THE FOLLOWING?**  ☐ Yes  ☐ No
**IF YES, DESCRIBE. (For additional space use the Additional Comments Section)**

1. **BASEMENT:** Any  ☐ water  ☐ seepage  ☐ cracks  ☐ dampness  ☐ leaks  ☐ damage  ☐ etc.?
   If yes, explain _____

2. **SUMP PUMP:**  ☐ Yes  ☒ No  ☐ Permanent?  ☐ Portable?  Currently operational?  ☐ Yes  ☐ No
   Source of Power? _____ Where located? _____

3. **ROOFING:**  Age of shingles: ___2 1/2 yrs.___      ☐ leaks  ☐ seepage  ☐ dampness  ☐ or other water problems?
   Explain: _____
   Was part of roofing replaced?                ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.
   Which part? _____
   Was *entire* roofing replaced?      When? _____
   When? ___7/99___      ☒ Yes  ☐ No  ☐ Unknown  ☐ N.A.

**FIREPLACE:** How many? ___3___  Working? ___3___
Location: __#1 MASTER BEDROOM , LIVING #2 RM , FAM RM #3__
Non-working? _____  Location: _____
Date last cleaned: __#3 10/12/00__ Date last inspected: __#1#2 10/12/00__

**CHIMNEY:** How many? ___2___  Working? ___2___
Location: __#4 BOILER RM , #3 FAM RM__
Non-working? _____  Location: _____
Date last cleaned: __#3#4 10/12/00__ Date last inspected: __/__/__

**WOOD/COAL BURNING STOVE:** How many? ___0___  Working? _____
Location: _____

9. ANY DAMPNESS ANYWHERE?    ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

If yes, describe:_____

_____

10. ANY VENTILATION PROBLEMS?    ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

If yes, describe: _13/1_ _23yrs._ _____ _3725_ _cloc cloccs sccw_

11. INSULATION?    _3'12_ ☒ Yes  ☐ No  ☐ Unknown  ☐ N.A.

If yes, describe: _ALL EXTERIOR WALLS & ATIC FLOOR_ _MN 01581 3120_

Walls type: _YES_ _____ Ceilings type: _____

When installed: ___/_41__ By whom: _____ When? ___/___/___

Room location: _____

Is there now, or has there ever been Urea Formaldehyde Foam-in-place Insulation (UFFI) installed?

☐ Yes ☐ No  If yes, when? ___/___/___ By whom? _____

Removed? ☐ Yes ☐ No  By whom? _____ When? ___/___/___

Has air test for UFFI been done?    ☐ Yes  ☐ No  ☒ Unknown  ☐ N.A.

Is there a copy of the report available?  ☐ Yes  ☐ No  ☐ Unknown  ☐ N.A.

12. TERMITE OR OTHER INSECT INFESTATION?  ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

If yes, identify: _____

Type of treatment: _____

By whom: _____ When? ___/___/___

Treatment contract in effect?    ☐ Yes  ☐ No  ☐ Unknown  ☐ N.A.

When does treatment contract expire?    ___/___/___

Is treatment contract transferrable?    ☐ Yes  ☐ No  ☐ Unknown  ☐ N.A.

13. LEAD PAINT: (SEE LEAD PAINT DISCLOSURE)

Was house built prior to 1978?  _2'12 yrs._                   ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

Have you ever had a lead paint inspection conducted?           ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

If yes, by whom? _____ When? ___/___/___

Copy of report available?                                     ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

Are you aware of the existence of any lead paint anywhere inside or outside?  ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

If yes, location: _7/00_

Have you arranged for the removal or encapsulation of lead paint on the property?  ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

If yes, explain when and by whom _____3_____

14. RADON:  _#1 MASTER BEDROOM_ , _#2 LIVING RM_ , _#3 FAM RM_

Has the property been tested for radon?           #1#2             ☐ Yes  ☐ No  ☒ Unknown  ☐ N.A.

If yes, date: ___/_3/9 /3_ 00_ Copy of report available? _10 12 00_    ☐ Yes  ☐ No  ☐ Unknown  ☐ N.A.

15. ASBESTOS AND HAZARDOUS WASTE:    _2_

Is asbestos and/or #4 asbestos containing insulation or material present in exterior shingles, floor tiles, ceiling tiles, walls, cement, plaster products, or otherwise present on the pipes or property?    ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

If yes, describe: _#3#4_ _10 12 00_

Are you aware of any hazardous waste on this property?   _0_       ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

Are you aware of any hazardous waste site within one mile or near this property?  ☐ Yes  ☒ No  ☐ Unknown  ☐ N.A.

SINGLE OR MULTI...

**17. HEATING SYSTEM:** Type of fuel: _OIL_    If oil, size of tank: _250_ gals.

Estimated annual fuel consumption costs? $ _1389_ /year

Includes domestic hot water fuel usage? ☒ Yes ☐ No  Oven/stove usage? ☐ Yes ☒ No

Tank Location ☐ Underground ☒ In Basement ☐ Other _____

Improvements and repairs? ☒ Yes ☐ No ☐ Unknown ☐ N.A.

If yes, explain: _REPAIR - NEW PRV & GLYCOL ADDED 6/01_

Heating Company's name: _NORTHBOROUGH OIL_  Heating Contractor's name: _NORTHBOROUGH OIL_

Any service contract in effect now? ☒ Yes ☐ No ☐ Unknown ☐ N.A.

Is copy available? ☒ Yes ☐ No ☐ Unknown ☐ N.A.

Any unheated finished rooms? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

Location: _____

Any supplemental heating? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If yes, what kind? _____

Any change in type of fuel used during your ownership? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

Has heating system been converted from oil to: ☐ Gas ☐ Wood/Coal ☐ Electric ☐ Other

If yes, has oil tank been removed or capped? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

Is there an **underground oil storage tank** present on the property? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If yes, give location: _____

Has it been tested for leaks and/or ground contamination? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

When? ___/___/___

If yes, by whom? _____

If not in use, has the Fire Department been notified? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

To Seller's knowledge, has any underground tank ever existed on the property? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

What kind? _____

**18. AIR CONDITIONING SYSTEM:** Type: ☒ Central ☐ Window ☐ Other

Improvements and Repairs or Problems? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

If yes, explain: _____

**19. PLUMBING SYSTEM:** ☐ Plumbing leaks ☐ Freezing ☐ Seepage ☐ Back-up ☐ Other

Improvements and Repairs? ☒ Yes ☐ No ☐ Unknown ☐ N.A.

If yes, explain: _NEW COLLAR CONNECTION AT WATER METER 4/01_

Any plumbing permits or approvals obtained from City/Town during ownership? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

Bathroom ventilation problems? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If yes, explain: _____

**20. SEWAGE SYSTEM:** If there is a private sewer system on the premises, the buyer should consult a qualified professional regarding its condition and compliance with applicable laws.

Type: ☒ Private ☐ Public ☐ Both ☐ Unknown

If private, type of system: ☒ Septic ☐ Cesspool  Size of tank _____   Location of system _FRONT YARD_

When installed _4/__/78_ When last pumped? _11/15/99_

Improvements, repairs or problems? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

**22. DRINKING WATER SOURCE:**

☐ Private ☒ Public  If private: ☐ Dug well ☐ Shallow ☐ Artesian ☐ Drilled well

Location: _____ Tested: quality _____ quantity _____

Date last tested: ____/____/____

Is inspection certificate available?  ☐ Yes ☐ No ☐ Unknown ☐ N.A.
**IF YES, ATTACH COPY.**

Has a back flow device been installed (MA. CMR 222)?  ☐ Yes ☐ No ☐ Unknown ☐ N.A.

Improvements, repairs or problems currently experienced,

known or believed by Seller to exist?  ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If yes, explain: _____

**23. DOMESTIC HOT WATER:**

Type: ☐ Gas ☐ Electric ☒ Oil  Capacity of tank _____ Age, if known _____

☐ Free standing ☐ Off furnace ☒ Tankless

Last tested when? ____/____/____ Results _____

If rented, what are the monthly costs $ _____

Improvements and/or Repairs  ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If yes, please explain: _____

**24. APPLIANCES:**

Which appliances stay with the house? ___ STOVE , KIT FRIG , DISHWASHER

_____

Any problems?  ☐ Yes ☒ No ☐ Unknown ☐ N.A.

Which appliances do not stay with the house? ___ WASHER/DRYER , FRIG/FREEZER IN GARAGE

_____

**25. TAXES: $** 4419 ___ for fiscal year ending 02 Tax rate $ _____ Assessed value: $ _____

Any re-evaluation of taxes in process or expected?  ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If yes, when? ____/____/____

Any abatements granted?  ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If so, when? ____/____/____ How much? $ _____

**26. EASEMENTS:** Any recorded or unrecorded easements, restrictions, covenants, encroachments, agreements, or

rights of way on or affecting the property?  ☐ Yes ☒ No ☐ Unknown ☐ N.A.

If yes, please explain: _____

**27. BETTERMENTS:**

Are street, sidewalk, water or sewerage betterments in process or planned?  ☒ Yes ☐ No ☐ Unknown ☐ N.A.

Any street, sidewalk, water, or sewage betterment charges outstanding?  ☐ Yes ☒ No ☐ Unknown ☐ N.A.

Amount $ _____ (Seller must payoff prior to closing)

**28. BANKRUPTCY:**

Are you involved in any current litigation/bankruptcy which may involve your property, your right to full and complete

enjoyment, use or the right to convey, free and clear of any liens or claims of others? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

**30. ROADS AND SIDEWALKS ABUTTING PROPERTY:**    ☐Public ☐Private ☐Paper

Explain: _____

Town/City approved roads? sidewalks?    ☐Yes ☐No ☐Unknown ☐N.A.

Explain: _____

Town/City plowed roads?    ☐Yes ☐No ☐Unknown ☐N.A.

Explain: _____

**31. TRASH PICK-UP:** ☐Private ☐Public   Fee $ _____

**32. FENCES:**

Are fences surrounding the property owned by you?    ☐Yes ☒No ☐Unknown ☒N.A.

If no, explain: _____

Are fences within property boundaries?    ☒Yes ☐No ☐Unknown ☐N.A.

If no, explain: _____

**33. DRIVEWAY:**

Is the driveway serving the property solely owned by you?    ☒Yes ☐No ☐Unknown ☐N.A.

If the driveway is shared with others, is there a written agreement concerning use and sharing of maintenance expenses?

☐Yes ☐No ☐Unknown ☐N.A.   **IF SO, PLEASE ATTACH A COPY**

Is driveway completely within property boundaries?    ☒Yes ☐No ☐Unknown ☐N.A.

If no, explain: _____

**34. BOUNDARY, POSSESSION, OR OTHER DISPUTES:** *STOVE , KIT FRIG , DISHWASHER*

Are there any pending or threatened legal proceedings against or involving the property or your right to ownership, use or

possession of any part of the property?    ☐Yes ☒No ☐Unknown ☐N.A.

Explain: _____ *WASHER /DRYER , FRIG/FREEZER IN GARAGE*

Has anyone suggested or asserted or have the right to assert, any claim against the ownership, use, possession or

enjoyment of any part of the property?    ☐Yes ☒No ☐Unknown ☐N.A.

Explain: _____

Are all structures, shrubs, driveways within the boundaries of the property as described in the deed?

☒Yes ☐No ☐Unknown ☐N.A.

Explain: _____

**35. ZONING:**

Is the current use a permitted use under the current zoning regulations?    ☐Yes ☒No ☐Unknown ☐N.A.

Classification? _____ If no, explain: _____

Is the current use non-conforming in any way?    ☐Yes ☒No ☐Unknown ☐N.A.

Does the structure meet the current setback and sideline requirements?    ☐Yes ☐No ☒Unknown ☐N.A.

If no, did it conform with the setback requirements when built?    ☐Yes ☐No ☐Unknown ☐N.A.

Have you applied for, been granted or denied any permit or variance

on this property?    ☐Yes ☒No ☐Unknown ☐N.A.

Explain: _____

Have you ever received any notices of zoning violations?    ☐Yes ☒No ☐Unknown ☐N.A.

Explain: _____

**37. SOIL REPORTS:**

Are percolation, hazardous waste, etc. reports available for inspection by the Buyer? ☐ Yes ☐ No ☒ Unknown ☐ N.A.

IF SO, ATTACH APPLICABLE COPIES and list type of report and date here: _____

**38. FLOOD HAZARD ZONE:**

Is the property or any part of the property within a Flood Hazard Zone? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

Are you required to carry Flood Insurance? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

**39. STANDING WATER:**

Is there any standing water on the property? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

**40. WETLANDS:**

Is the property or any part of the property within Wetlands? ☐ Yes ☐ No ☒ Unknown ☐ N.A.

Explain: _____

Is the property subject to a Conservation Commission Order of Conditions? ☐ Yes ☐ No ☒ Unknown ☐ N.A.
IF SO, ATTACH COPY.

**41. POOLS & EQUIPMENT:** Type of swimming pool _____

Have you ever experienced any problems? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

If yes, explain: _____

Maintenance history: _____

Was a permit obtained for the pool? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

*Stove, kit frig, Dishwasher*

**42. SMOKE DETECTOR:** ☐ Yes ☐ No ☐ Portable ☒ Hard-wired

NOTE: Seller is required to provide a certificate prior to closing.

*Washer/Dryer, Refrigerator in garage*

**43. RENTAL INFORMATION**

a. Is property subject to rent control, regulation or review? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

b. If no, reason: ☐ Exempt ☐ Decontrolled ☐ Other

   Explain: _____

c. If yes, list maximum rents _____

d. Are there written leases in effect? ☐ Yes ☐ No ☐ Unknown ☐ N.A.

e. If rented, lease periods/tenancy at will _____

           rents $ _____ /month _____

ATTACH ANY LEASES, RENTAL AGREEMENTS, TENANT CORRESPONDENCE, STATEMENTS OF
CONDITION, ETC.

f. If rented, owner is holding:

   i. last month's rent: Amounts $ _____

   ii. security deposit in escrow: Amount $ _____

g. If rented, has interest been paid on last month's rent/security deposit? Date ____/____/____ Amount _____

**44. OTHER MATERIAL INFORMATION:**

Is Seller aware of any other information concerning any part of the property which might affect the decision of a Buyer to
buy or affect the value of the property or its use by a Buyer? ☐ Yes ☒ No ☐ Unknown ☐ N.A.

Explain:

The following clauses are provided for descriptive purposes only. For detailed information, consult the Massachusetts Department of Public Health, the Massachusetts Department of Environmental Protection, or other appropriate agency, or your attorney.

**A. Flood Hazard Insurance Disclosure Clause.** The lender may require flood Hazard Insurance as a condition of the mortgage loan, if the lender determines that the premises is in a flood hazard zone.

**B. Chlordane Disclosure Clause.** Pesticide products containing chlordane were banned in Massachusetts on June 11, 1985, following a determination by the Department of Food and Agriculture that the use of chlordane may cause unreasonable adverse effects on the environment including a risk of cancer. Although existing data does not conclusively prove that significant health effects have occurred as a direct result of chlordane use, the long-term potential health risks are such that it is prudent public health policy, according to the Department, to eliminate the further introduction of chlordane into the environment.

**C. Urea-Formaldehyde Foam Insulation Disclosure Clause.** The Buyer acknowledges that s/he/they has/have been advised that Urea-Formaldehyde Foam Insulation (UFFI) has been declared by the Massachusetts Department of Public Health (DPH) to be a banned hazardous substance and that new installation is prohibited. Where UFFI was previously installed, the Seller is required to advise the Buyer (1) where such UFFI is located and, if known, when it was installed; (2) a copy of test results concerning the air level of formaldehyde; and (3) a copy of information from the DPH concerning UFFI and formaldehyde levels. Under certain circumstances the cost of removal may be reimbursed. Exposure to hazardous levels of formaldehyde may cause personal injuries, including headaches, nausea or cancer. The Buyer acknowledges that s/he/they has/have been advised to consult the DPH or her/his/their attorney for further information.

**D. Asbestos Disclosure Clause.** The United States Consumer Product Safety Commission has maintained that asbestos materials are hazardous if they release separate fibers which can be inhaled. Asbestos is a common insulation material on heating pipes, boilers, and furnaces. It may also be present in certain types of floor and ceiling materials, shingles, plaster products, cements and other building materials. The Buyer may have the property professionally inspected for the presence of asbestos and if repair or removal of asbestos is desired, proper safety guidelines must be observed.

**E. Lead Paint Disclosure Clause.** Whenever a child under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner is required by law to remove said paint, plaster or cover with appropriate materials so as to make it inaccessible to a child under six years of age. Consumption of lead is poisonous and may cause serious personal injury. Whenever such residential premises containing dangerous levels of lead undergoes a change of ownership, and, as a result, a child under six years of age will become a resident, the new owner is required by law to remove said paint, plaster or cover with appropriate materials so as to make it inaccessible to such child. Massachusetts law can hold an owner of real estate

**F. Hazardous Materials Disclosure Clause.** In certain circumstances Massachusetts law can hold an owner of real estate liable to pay for the cost of removing hazardous or toxic materials from real estate and for damages resulting from the release of such materials, according to the Massachusetts Oil and Hazardous Material Release and Response Act, General Laws, Chapter 21E. The Buyer acknowledges that s/he/they may have the property professionally inspected for the presence of, or the substantial likelihood of release of oil or hazardous material and such proof of inspection may be required as a prerequisite for financing the property.

**G. Radon Disclosure Clause.** Radon is an odorless, colorless, tasteless gas produced naturally in the ground by the normal decay of uranium and radium. Radon can lead to the development of radioactive particles which can be inhaled. Studies indicate the result of extended exposure to high levels of radon may increase the risk of developing lung cancer.

**H. Agency Disclosure.** ALL BROKERS/SALESPERSONS REPRESENT THE SELLER, NOT THE BUYER, IN THE MARKETING, NEGOTIATING AND SALE OF THE PROPERTY, UNLESS OTHERWISE DISCLOSED. HOWEVER, THE BROKER/SALESPERSON HAS AN ETHICAL AND LEGAL OBLIGATION TO SHOW HONESTY AND FAIRNESS TO THE BUYER IN ALL TRANSACTIONS.

Seller acknowledges that: the information contained in this statement is accurate, true and complete to the best of Seller's knowledge, information and belief; s/he/it has provided all the information contained in this Seller's Statement on Property Condition; and that the broker/realtor has not prepared this Statement nor provided any information regarding the Property which appears on this Statement. Seller hereby indemnifies, holds harmless and releases all brokers/realtors involved in the sale of the Property from all liability, claims, loss, cost or damage (including, without limitation, attorney's fees) in connection with the information contained in this Statement. I/we hereby authorize the listing broker to provide copies of this Statement to other real estate brokers and agents and prospective buyers of the Property.

Seller's signature _____    Date: _12/21/01_

Seller's signature _____    Date: _12-31-01_